# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| CLIFFORD HALL, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )   CAUSE NO.: 2:09-CV-175-PPS-PRC |
| | ) |
| LIFE INSURANCE COMPANY OF | ) |
| NORTH AMERICA and BP WELFARE | ) |
| PLAN TRUST -III, | ) |
| | ) |
|     Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court on (1) Plaintiff's Motion to Compel [DE 24], filed by Plaintiff Clifford Hall on December 22, 2009; (2) Defendants' Motion to Quash Subpoena Directed to Intracorp or, Alternatively, for a Protective Order [DE 22], filed by Defendant Life Insurance Company of North America ("LINA") and BP Welfare Plan Trust-III (collectively "Defendants") and by subpoena respondent International Rehabilitation Associates ("Intracorp") on December 21, 2009; and (3) a Motion for Extension of Time [DE 35], filed by Defendants and Intracorp on January 22, 2010. The motions are fully briefed and ripe for ruling.

## PROCEDURAL AND FACTUAL BACKGROUND

Mr. Hall was employed as a Process Operator with BP Corporation North America for 27 years until becoming totally disabled in December 2007. His job was categorized as a medium level job, and his responsibilities included carrying various tools and equipment, using a computer, connecting and disconnecting tank cars, loading tank cards, and other physical tasks in an oil refinery setting. Mr. Hall was a participant in the BP Welfare Plan Trust - III ("BP Plan"), an employee benefit plan provided for the employees of BP Corporation. LINA provides long term disability insurance coverage to participants of the BP Plan.

On December 1, 2007, Mr. Hall was involved in a motor vehicle accident in which he sustained serious neck and back injuries and a traumatic brain injury. Mr. Hall's last date of work was December 2, 2007. Mr. Hall applied for benefits through the LINA, and his treating physicians provided objective medical proof that Mr. Hall was unable to work due to his medical condition. LINA approved Mr. Hall's short term disability claim and paid him short term disability benefits for several weeks after he became disabled. However, LINA denied Mr. Hall's claim for long term disability benefits.

LINA is both the payor and the claim adjudicator of Mr. Hall's claim. In this case, LINA requested that Intracorp assign a specialist in occupational medicine to review Mr. Hall's medical records, and Dr. Ephraim Brenman was assigned by Intracorp to review the records. LINA's instructions to Intracorp surrounding the review and Dr. Brenman's report are contained in the administrative record, which has been produced to Mr. Hall. Both LINA and Intracorp are wholly-owned subsidiaries of CIGNA.

On June 22, 2009, Mr. Hall filed this lawsuit in the United States District Court for the Northern District of Indiana, claiming that LINA wrongfully denied him long term disability benefits. On August 19, 2009, Mr. Hall served Interrogatories and a Request for Production of Documents on LINA. On September 25, 2009, LINA provided Mr. Hall with answers to the Interrogatories and responses to the Request for Production, raising several objections in both, including that the information sought is not reasonably calculated to lead to admissible evidence; the information sought is private; the information sought is confidential, proprietary, and trade secret information; and the information sought is beyond the information submitted to LINA during the claims process.

Counsel for the parties conferred regarding the discovery, Mr. Hall agreed to revise the discovery requests, and LINA agreed to provide responses to the remaining requests by October 20, 2009. Mr. Hall did not receive any supplementary responses by that date. On December 15, 2009, counsel for Mr. Hall sent counsel for LINA an email inquiring as to the overdue responses, and, in a response dated December 18, 2009, counsel for LINA responded that LINA would not be providing supplemental responses. In November or December 2009, Mr. Hall served a subpoena duces tecum on Intracorp.

## ANALYSIS

In this ERISA benefits case, Mr. Hall seeks discovery outside of the administrative record into a conflict of interest LINA has as both the plan administrator and payor of benefits, arguing that the Supreme Court decision in *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2346 (2008), permits such discovery in order for the Court to properly weigh the conflict as a factor in its review of LINA's decision. He contends that LINA was biased in its claim review because it emphasized the medical reports that favor denial of benefits and deemphasized other reports showing that Mr. Hall is totally disabled. In contrast, LINA contends that *Glenn* did not change the established Seventh Circuit law in *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 814 (7th Cir. 2006), regarding the proper scope of discovery when the standard is abuse of discretion and that Hall has not met his burden under the two-prong test established in *Semien*. Before the Court are a Motion to Compel filed by Mr. Hall and a Motion to Quash filed by Defendants and Intracorp. As the disputed discovery in both motions is a result of the disagreement by the parties as to whether Mr. Hall may conduct discovery into the structural conflict of interest, the Court considers the legal basis of the motions jointly.

The scope and limits of discovery in civil cases are set forth in Federal Rule of Civil Procedure 26:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1). District courts have broad discretion when deciding whether to compel discovery. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002).

Mr. Hall's claim is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq., which was "enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 829 (2003) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989)). A person who is denied benefits under an ERISA employee benefit plan is permitted "to challenge that denial in federal court." *Glenn*, 128 S. Ct. at 2346; *see also* 29 U.S.C. § 1132(a)(1)(B). "When reviewing a plan administrator's decision in the ERISA context, the district court has significant discretion to allow or disallow discovery requests." *Semien*, 436 F.3d at 814.

The scope of permissible discovery in these cases is affected by the standard of review the Court applies to the benefits decision. "When review is deferential-when the plan's decision must be sustained unless arbitrary and capricious-*then* review is limited to the administrative record." *Krolnik v. Prudential Ins. Co. of Am.*, 570 F.3d 841, 843 (7th Cir. 2009) (citing *Perlman v. Swiss*

*Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975 (7th Cir. 1999)); *see also Glenn*, 128 S. Ct. at 2348. In this case, the parties agree that the applicable standard of review of the denial of Mr. Hall's claim is the arbitrary and capricious standard.[1]

Under such circumstances–when the plan administrator possesses discretionary authority and the district court reviews the decision under the deferential arbitrary and capricious standard–the Seventh Circuit has articulated a reluctance to grant extensive discovery:

> [W]hen there can be no doubt that the application was given a genuine evaluation, judicial review is limited to the evidence that was submitted in support of the application for benefits, and the mental processes of the plan's administrator are not legitimate grounds of inquiry any more than they would be if the decisionmaker were an administrative agency.

*Perlman*, 195 F.3d at 982. However, in *Semien*, the Seventh Circuit reasoned that, on occasion, limited discovery beyond the administrative record is "appropriate to ensure that plan administrators have not acted arbitrarily and that conflicts of interest have not contributed to an unjustifiable denial of benefits." 436 F.3d at 814. The Seventh Circuit then established two factors a plaintiff must demonstrate before such limited discovery becomes appropriate: (1) the identification of "a specific conflict of interest or instance of misconduct" and (2) making "a prima facie showing that there is good cause to believe limited discovery will reveal a procedural defect in the plan administrator's determination." *Id*. at 815 (citing *Bennett v. Unum Life Ins. Co. of Am.*, 321 F. Supp. 2d 925, 932-33 (E.D. Tenn. 2004)).

---

[1] In his opening brief, Mr. Hall advocated for de novo review on the basis that the BP Plan does not confer discretionary authority to determine benefit eligibility to LINA. *See* Pl. Br., pp. 5-7. In response, LINA attached the relevant plan documents granting LINA discretionary authority to decide benefit claims. In *Semien*, the Seventh Circuit considered the same plan documents, determined that they granted LINA discretionary authority to decide benefit claims, and applied the arbitrary and capricious standard of review. *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 814 (7th Cir. 2006). In his reply brief, Mr. Hall explains that he only recently viewed the documents produced by LINA and, "[r]ather than spending months litigating the appropriate standard of review in this case, Mr. Hall will stipulate to an abuse of discretion standard." Pl. Reply, p. 1.

This limit on discovery that had been considered established law in the Seventh Circuit has come into question since the United States Supreme Court in *Glenn* held that a structural conflict of interest exists when a plan administrator "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket." *Glenn*, 128 S.Ct. at 2346. The Supreme Court reaffirmed that a deferential standard of review is appropriate when the plan administrator is granted discretionary authority to determine eligibility for benefits and that if that plan administrator "is operating under a conflict of interest, that conflict must be weighed as a 'factor in determining whether there is an abuse of discretion.'" *Id*. at 2348, 2350 (quoting *Firestone Tire*, 489 U.S. at 115). The Supreme Court explained that "any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance." *Id*. at 2351. Under the facts in *Glenn*, the Supreme Court explained that

> the conflict of interest at issue here . . . should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

*Id*. Although *Glenn* does not discuss the standard for discovery in such cases, the Court cautioned against the creation of "special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict," explaining that conflicts are only one factor of many. *Id*.

In this case, the parties agree that a conflict of interest exists pursuant to *Glenn* because LINA, as plan administrator, both made the benefit determination and paid benefits; however, they disagree as to whether discovery into the conflict is permissible. District courts in the Seventh Circuit, and throughout the country, have come to different conclusions regarding whether conflict discovery is permissible in the wake of *Glenn*.[2] In the Northern District of Illinois, shortly after the *Glenn* decision, at least one court held that *Glenn* did not overrule *Semien* and applied the two-part test for discovery. *See Marszalek v. Marszalek & Marszalek Plan*, No. 06 C 3558, 2008 WL 4006765, at *2 (N.D. Ill. Aug. 26, 2008). Another court in that district more recently applied the two-part test on the basis that the congressional purposes of inexpensive and expeditious claims decisions require the continued application of *Semien*. *See Garvey v. Piper Rudnick LLP Long Term Disability Ins. Plan*, — F.R.D. — , —, 2009 WL 3260010, at * 6 (N.D. Ill. Oct. 9, 2009), *rev'd on other grounds*, — F.R.D.—, —, 2009 WL 3260010 (N.D. Ill. Oct. 9, 2009).

However, courts in the Southern District of Indiana have almost unanimously concluded that *Glenn* abrogated the requirement in *Semien* that a claimant make an exceptional showing before

---

[2] In opposition to this discovery, LINA cites a number of such cases opposed to discovery, many of them issued in the months following *Glenn*. *See, e.g.*, *Johnson v. Connecticut Gen. Life Ins. Co.*, 324 Fed. App'x 459 (6th Cir. 2009); *Singleton v. Hartford Life & Accident Ins. Co.*, 2008 WL 3978680, at * 1 (E.D. Ark. July 29, 2008); *Dubois v. Unum Life Ins. Co. of Am.*, No. Civ. 08-163-P-S, 2008 WL 2783283, at *2-3 (D. Me. 2008); *Eppler v. Hartford Life and Acc. Ins. Co.*, No. C 07-04696, 2008 WL 3266469, at * 8 (N.D. Cal. Aug. 7, 2008); *Weeks v. Unum Group*, No. 2:07-CV-577, 2008 WL 4329223, at * 1 n. 1 (D. Utah Sep. 15, 2008); *Samuel v. Citibank, N.A., Long Term Disability Plan*, No. Civ. 07-4051, 2008 WL 4138174, at * 1 (D. S.D. Sep. 3, 2008); *Christie v. MBNA Group Long Term Disability Plan*, Civ. No. 1:08-cv-44, 2008 WL 4427192, at * 2 (D. Me. Sep. 25, 2008). In contrast, ample case law allows discovery into a conflict of interest following *Glenn*. *See, e.g.*, *Denmark v. Liberty Life Assur. Co. of Boston*, 566 F.3d 1 (1st Cir. 2009); *Emery v. Am. Airlines, Inc.*, No. 08-22590-CIV, 2010 WL 457151, at * 3 (S.D. Fla. Feb. 4, 2010); *Sullivan v. Deutsche Bank Americas Holding Corp.*, Civil No. 08CV2370, 2010 WL 391821, at * 1 (S.D. Cal. Feb. 2, 2010); *Thornton v. W. and S. Life Ins. Co.*, No. 3:08-CV-648, 2010 WL 411119, at * 2 (W.D. Ky. Jan. 28, 2010); *Sampson v. Prudential Ins. Co. of Am.*, No. 08-1290, 2009 WL 882407, at * 2 (E.D. Mo. Mar. 26, 2009); *Hackett v. Standard Ins. Co.*, No. Civ. 06-5040, 2009 WL 3062996, at * 6 (D. S.D. Sep. 21, 2009); *Sanders v. Unum Life Ins. Co. of N. Am.*, No. 4:08-CV-421, 2008 WL 4493043, at * 4 (E.D. Ark. Oct. 2, 2008). LINA also cites *Lison v. Unum* in support of its position; however, *Liston* is a 2003, pre-*Glenn* decision. *See Liston v. Unum*, 330 F.3d 19 (1st Cir. 2003).

obtaining discovery. *See Barker v. Life Ins. Co. of N. Am.*, 1:09-CV-369, — F.R.D. —, —, 2009 WL 5191441, at * 4 (S.D. Ind. Dec. 28, 2009) (citing cases). In *Gessling v. Group Long Term Disability Plan for Employees of Sprint/United Management Co.*, the court found that prior cases such as *Semien* that "made discovery in such cases nearly impossible to obtain" had been superceded by *Glenn* and that discovery outside the administrative record is permissible, although the court limited the additional discovery to the issue of bias. No. 1:07-CV-0483-DFH-DML, 2008 WL 5070434, at *1 (S.D. Ind. Nov. 26, 2008) (citing *Hogan-Cross v. Metro. Life Ins. Co.*, 568 F. Supp. 2d 410, 414-16 (S.D.N.Y. 2008); *Winterbauer v. Life Ins. Co. of N. Am.*, 2008 WL 4643942, at *4-6 (E.D. Mo. Oct. 20, 2008)).

Affirming *Gessling*'s skepticism that *Semien* remains vital in light of *Glenn* yet acknowledging the lingering admonition in *Semien* that discovery should remain limited even in the presence of a conflict, another court in the same division allowed discovery into the conflict of interest such as discovery of underwriting materials, plan procedures, training, the relationship between the administrator and third-party reviewers, compensation structures, approval/denial statistics, and steps taken to ensure accuracy. *See Fischer v. Life Ins. Co. of N. Am.*, No. 1:08-CV-396, 2009 WL 734705, at * 3 (S.D. Ind. Mar. 19, 2009) (citing *Semien*, 436 F.3d at 814-15); *see also Barker,* — F.R.D. at —, 2009 WL 5191441, at *4 (finding that *Glenn* contemplates the production of evidence relevant to the claim administrator's alleged conflicts in making disability determinations but assessing each request for relevancy); *Anderson v. Hartford Life and Accident Ins. Co.*, 2:08-CV-471, 2009 WL 3733343, at * 1 (S.D. Ind. Oct. 30, 2009) (finding that conflict-of-interest discovery should be the rule rather than the exception in ERISA cases); *Hughes v. CUNA Mut. Group*, 257 F.R.D. 176, 179 (S.D. Ind. 2009) (agreeing that the test in *Semien* is incompatible

with *Glenn*'s rejection of "special procedural . . . rules"); *Reimann v. Anthem Ins. Cos., Inc.*, No. 1:08-CV-830, 2008 WL 4810543, at * 23 (S.D. Ind. Oct. 31, 2008) (finding that, under *Semien* and in light of *Glenn*, plaintiff must have an opportunity to supplement the record and, "presumably, to conduct at least some targeted discovery"); *but see Creasey v. Cigna Life Ins. Co. of New York*, No. 2:07-CV-343, 2008 WL 4810539, at *1 (S.D. Ind. Oct. 31, 2008), *reaffirmed in Creasey v. Cigna Life Ins. Co. of New York*, No. 2:07-CV-343, 2009 WL 55226, at *1 (S.D. Ind. Jan. 6, 2009) (declining to follow *Semien* but finding that the question of whether further discovery is required in cases with a structural conflict of interest should only be decided after the dispositive motion is fully briefed).

This Court finds that *Glenn* makes clear that evidence related to the conflict of interest is relevant to the review of the denial of benefits and, thus, is discoverable. The Court also finds that the "high bar" set in *Semien* for obtaining discovery is incompatible with *Glenn*'s rejection of "special procedural . . . rules" when there is a conflict of interest. It would be difficult if not meaningless for a court to measure the impact or weight of the conflict of interest, as contemplated by the Supreme Court in *Glenn*, based solely on the administrative record without the benefit of discovery. Such discovery includes whether any factors in the relationship between LINA, Intracorp, and Dr. Brenman affected the unbiased review of Mr. Hall's claim, whether LINA has a history of biased claims administration, whether LINA has taken active steps to reduce any bias, whether LINA has taken active steps to promote accuracy in the claims process, and whether LINA has management checks in place to penalize inaccurate decisionmaking. In this case, LINA has provided detailed interrogatory responses attempting to quell any suspicion that the structural conflict of interest impacted its decision in this case. However, as in *Hughes* and *Barker*, LINA's

9

responses are first "an implicit concession that such information is relevant" and second "nothing more than a selective disclosure of discoverable information," which is generally disfavored by our adversarial system. *See Barker*, — F.R.D. at —, 2009 WL 5191441, at * 4 (citing *Hughes*, 257 F.R.D. at 179-80).

Although the Seventh Circuit has not yet addressed this discovery issue, the court in *Marrs v. Motorola, Inc.*, discussing how to apply the conflict-of-interest factor under *Glenn* to determine the "gravity of the conflict," commented that "the terms of employment of the staff that decides benefits claims might . . . affect a determination of how likely it is that those employees would slant their decisions in favor of their employer's short-term interest in minimizing his benefits expense" but found no indication that the plan administrator had acted under a conflict of interest. 577 F.3d 783, 789 (7th Cir. 2009). If the "terms of employment of the staff that decides the claims" could affect the court's determination, those "terms of employment" are relevant and, if not contained within the administrative record, should be discoverable.

Therefore, the Court rules that Mr. Hall is permitted to conduct reasonable and limited discovery into the conflict of interest on the part of LINA under Rule 26(b). However, cognizant that the Seventh Circuit disfavors extensive discovery based on the discretion afforded plan administrators and ERISA's goals of inexpensive and expeditious resolution of benefits disputes, *see Semien*, 436 F.3d at 815, the Court reviews each of the disputed discovery requests and the subpoena to ensure that they are relevant and reasonable.

### B. Motion to Compel - Reasonableness of Discovery Requests

In the Motion to Compel, Mr. Hall seeks answers to Interrogatories Nos. 2 through 7 and responses to Request to Produce Documents Nos. 5 through 10, arguing that he has narrowly tailored

his requests to information pertaining to the medical vendors and physicians utilized by LINA to review and deny his claim that is not contained within the claim file. The Court considers each request and LINA's objections in turn.

*1. Interrogatory No. 2*

Mr. Hall requests the name, address, title, phone number, and employer of medical and vocational professionals who reviewed this claim. LINA responds that the names as well as any documentation related to their review of his claim are contained within the administrative record, which has been provided to Mr. Hall. The Court orders LINA to respond to this interrogatory as it is relevant to the issue of bias.

*2. Interrogatories Nos. 3 & 4 and Requests to Produce Nos. 8 & 9*

Interrogatory No. 3 requests the method of compensation for the medical or vocational professionals who were hired by LINA to review Mr. Hall's claim. Interrogatory No. 4 asks LINA to identify how much money these professionals have been paid by LINA for the past five years. Request to Produce No. 8 seeks billing statements from anyone who reviewed Mr. Hall's claim, and Request to Produce No. 9 asks for 1099 forms showing compensation to medical or vocational professionals involved in this claim for 2003-2008. LINA objects, arguing that discovery is not necessary to establish that these individuals were compensated by LINA. LINA also objects that the requests are overly broad because Mr. Hall's claim was reviewed at the administrative level only during years 2008 and 2009. The Court finds that the method of and total compensation of those reviewing Mr. Hall's claim is relevant to the issue of bias. The Court further finds that the five year period of 2003-2008 is not overbroad in that it constitutes a sufficient number of years to demonstrate trends or adjustments in compensation correlated with denial rates that may indicate

11

a bias. The Court orders that LINA is to redact the social security numbers on all 1099s produced to Mr. Hall.

*3. Interrogatories Nos. 5-7*

Interrogatories No. 5, 6, and 7 ask LINA to identify the number of claims reviewed by the medical or vocational professionals who reviewed Mr. Hall's claim in the past five years, to identify now many of those claims these professionals and their employer reviewed and found the claimant not disabled for the past five years, and to identify, from the same group of claims, how many times was a claimant denied or terminated by LINA. In opposition, LINA objects that how claims other than Mr. Hall's were handled do not demonstrate bias in the decision on Mr. Hall's claim because each claim is unique and even an in-depth analysis of each claim would only provide subjective conclusions regarding bias. LINA also objects that the interrogatories are overly broad in their time frame. As determined in *Barker* and *Fischer*, "'statistical information regarding the approval/denial/termination of benefits under Plaintiff's insurance plan'" may be relevant to the issue of bias in the claims review process." *Barker*, — F.R.D. at —, 2009 WL 5191441, at * 6 (quoting *Fischer*, 2009 WL 734705, at * 4-5). Again, the time frame requested is not overly broad. Therefore, the Court orders LINA to respond to Interrogatories Nos. 5-7.

*4. Request to Produce No. 5*

Mr. Hall requests all correspondence between LINA and its medical examiners or their employers sent any time during the pendency of Mr. Hall's claim. LINA objects that this request is overly broad because it does not identify the subject of the correspondence, for example whether the request is limited to Mr. Hall's claim, other individuals' claims, billing, administrative issues, or something else. LINA clarifies that if the correspondence sought involves Mr. Hall's claim, it

12

is already contained within the administrative record, which has been produced. If Mr. Hall is seeking correspondence related to other claims for benefits, LINA argues that such documents are irrelevant to Mr. Hall's claims and would require disclosure of personal information as to individuals who are not parties to this litigation in violation of the Health Insurance Portability and Accountability Act of 1996. Mr. Hall has not provided any specific argument in his reply to clarify the scope of the request or a basis for seeking documents related to other individuals, if that is in fact what he seeks. To the extent correspondence referencing Mr. Hall's claim is not contained within the administrative record, the Court finds such documents relevant, grants the Motion to Compel as to those documents, and orders LINA to produce any such documents, regardless of the content of the correspondence (billing, administrative issues, etc.). Any other correspondence is not reasonably likely to lead to the discovery of admissible evidence and is likely to reveal highly personal information about other individual's medical claims, and the Court denies the Motion to Compel as to those documents.

5. *Request to Produce No. 6*

LINA has agreed to produce the curriculum vitae of the medical and vocational experts who reviewed Mr. Hall's claim. Therefore, the Motion to Compel is moot as to this request.

6. *Request to Produce No. 7*

Request No. 7 seeks contracts and agreements with third party medical reviewers for Mr. Hall's claim. LINA objects, because the fact that LINA's medical reviewers have contracts with LINA or that they are paid for their work is self evident, no further evidence is needed to prove this point. The Court finds that these documents are relevant given the alleged relationship between LINA and Intracorp. As stated by the court in *Barker*: "The point of having a third-party medical

13

provider is for it to make independent medical judgments. If, however, it is nothing more than a captured sister company of LINA, that information could be indicative of bias in the review process." — F.R.D. at —, 2009 WL 5191441, at * 7. The Court orders LINA to respond to Request to Produce No. 7.

*7. Request to Produce No. 10*

Request No. 10 asks for reports provided to LINA from reviewing physicians for the past five years. LINA again objects that this request seeks private information from individuals who are not parties to this litigation and that the reports pertaining to those individuals are not relevant to Mr. Hall's claim and this litigation. As in *Hughes* and *Barker*, this Court finds that any potential relevance those reports may have to Mr. Hall's claims is "outweighed by the invasion of those claimants' privacy that would result from the production of their files." The Court denies the motion to compel as to Request to Produce No. 10.

### C. Motion to Quash or in the Alternative for a Protective Order

Mr. Hall served a subpoena on Intracorp, the third party with whom LINA arranged for the review of medical records in connection with Mr. Hall's disability claim. Defendants and Intracorp (collectively "subpoena Defendants") provide several arguments in support of the motion to quash the subpoena.

*1. Rule 45(b) - Prior Service of Notice*

As an initial matter, the subpoena Defendants object to the subpoena served on Intracorp because it was not served on LINA or the Plan either prior to or at the time it was issued to Intracorp in violation of Federal Rule of Civil Procedure 45(b). Although the cover letter is dated November 24, 2009, Defendants were unaware that Mr. Hall had served the subpoena until December 10, 2009. On December 11, 2009, Defendants requested a copy of the subpoena from Mr. Hall's counsel and inquired as to whether the subpoena was previously served. On December 15, 2009, Defendants

received a second copy of the subpoena from Mr. Hall's counsel's office. Therefore, the subpoena Defendants argue that the subpoena should be quashed. Mr. Hall responds that Defendants were not prejudiced by his failure to serve a copy of the subpoena prior to its issuance to Intracorp and that the Defendants have preserved their opportunity to object to the supboena by way of the Motion to Quash. The subpoena Defendants offer no reply in support of this basis for quashing the subpoena and, thus, offer no argument that Defendants were prejudiced.

The prior notice requirement of Federal Rule of Civil Procedure 45(b) is necessary in order "to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 386 (7th Cir. 2008) (quoting Fed. R. Civ. P. 45, committee note, 1991 amendments). In this case, the only sanction the subpoena Defendants seek for the failure to provide notice of the subpoena is quashing the subpoena. In this case, the facts before the Court suggest that Mr. Hall's failure to provide Defendants with prior notice was an honest oversight and that counsel for Mr. Hall sent Defendants a copy of the subpoena as soon as counsel was notified that a notice of the subpoena had not been provided to them. There is no allegation of prejudice in this case by Defendants. Intracorp has not produced any documents in response to the subpoena, and, thus, Defendants have preserved their objections to the subpoena and have had a full opportunity to present their arguments to the Court. Accordingly, the Court denies the Motion to Quash on the basis of the Rule 45(b) violation.

2. *Substantive Objections to the Subpoena*

Having already found in Part A above that the information generally sought in the subpoenas is relevant and discoverable under *Glenn*, the Court denies the Motion to Quash on the substantive relevancy arguments. However, the Court now considers the Motion for Protective Order and reviews each individual request to ensure it is relevant. The Court notes that Mr. Hall's response

15

brief addresses only the general relevancy of discovery of the conflict and does not respond to Defendants' specific objections.

a. Relevancy

    1) Requests Nos. 6, 7, 15, & 16

Request No. 6 seeks contracts, agreements, or writings regarding Dr. Brenman's reviews or consultations for Intracorp for the last three years; Requests Nos. 7 and 15 seek information on how much Intracorp paid Dr. Brenman for the last three years for medical examinations, reviews, and consultations; and Request No. 16 seeks any and all contracts or agreements between Intracorp and LINA. Defendants object that, because LINA is not a party to those contracts or arrangements, the information requested in 6 and 7 is irrelevant. The subpoena Defendants object that Request No. 15 is not limited to claims for LINA. For Request No. 16, they object that Mr. Hall already has LINA's instructions to Intracorp regarding the records review of his claim. The evidence in the four requests is relevant as it may reveal whether Intracorp and Dr. Brenman are independent medical reviewers or are in essence employed by LINA. The evidence may also reveal incentives to Dr. Brenman or Intracorp that may reveal bias. The Court orders that any personal identifiers, other than the first name of Dr. Brenman, including, but not limited to, third party names, addresses, or Dr. Brenman's birthdate or social security number, shall be redacted from any documents produced.

    2) Requests Nos. 8 & 14

These requests seek information regarding the number of medical reviews and consultations that have been performed by Intracorp for LINA, the compensation paid by LINA to Intracorp for that work, and the number of medical reviews and consultations performed by Dr. Brenman for LINA in the past three years. The subpoena Defendants argue that this evidence is irrelevant to whether LINA acted with a conflict of interest in Mr. Hall's case. The Court finds that the request for records regarding compensation in Request No. 8 is relevant to the issue of bias. Regarding

16

Request No. 14, like Request No. 7, the Court finds that documents reflecting the amounts paid by LINA to Intracorp for the past three years are relevant and shall be produced. However, any personal identifiers of third parties and Dr. Brenman (other than his name) shall be redacted.

    3) Requests Nos. 11, 12, & 13

As for Requests Nos. 11 and 12, which ask for "[a]ny and all documents, letters, records, or other writings which reflect how many medical records reviews were performed by Dr. Brenman [or Intracorp] for LINA over the past three years," and Request No. 13, which asks for information as to Dr. Brenman's and Intracorp's billing rates for the past three years for medical records review, the Court finds that many of these documents would likely require the disclosure of third parties' medical information, and on this basis the Court grants generally the Motion for Protective Order as to such documents. However, to the extent there are any documents, letters, records, or other writings that reflect the *fact* of Dr. Brenman's or Intracorp's work without containing the *substance* of that work (such as compensation documents from which identifiers of third parties may easily be redacted or summary reports), such documents shall be disclosed. Again, any personal identifiers of third parties and Dr. Brenman (other than his name) shall be redated.

b. Duplication - evidence regarding LINA's Instructions for Dr. Brenman's review

The subpoena Defendants argue that the information was already provided in the administrative record, including Intracorp's Referral Form for Physician Review detailing LINA's instructions for Intracorp for the medical review, the instructions for completing the review, the three questions that the reviewing physician was to answer, and Dr. Brenman's three-page report detailing the documents he reviewed, his attempts to contact Mr. Hall's treating physicians, and his answers to the three questions. The subpoena Defendants argue that this information essentially satisfies Requests Nos 1, 2, 4, and 5 and that requiring production of this information would be duplicative, burdensome, and not warranted under the totality of the circumstanes. Request No. 1

17

asks for all correspondence, memorandums, notes, messages, and other writings to Intracorp or Dr. Brenman from any claims person, representative, or employee of LINA or its subsidiaries. Request No. 2 asks for the same documents from Intracorp to any employee of LINA. Request No. 4 seeks all notes, tapes, papers, or any other writing or recording regarding Intracorp's work or Dr. Brenman's work in reviewing the medical records or claims of Mr. Hall. Request No. 5 asks for the complete file of Intracorp and/or Dr. Brenman regarding Mr. Hall. The Court finds that all of these documents are relevant and shall be produced.

c. Requests Nos. 9 & 10

Requests Nos. 9 and 10 seek all reports generated by Intracorp for LINA in disability claims and all reports generated by Dr. Brenman for LINA in disability claims for the past three years. The Court finds that these requests are overbroad and would require the disclosure of third parties' medical information. The Court grants the Motion for Protective Order as to the Requests Nos. 9 and 10, and orders that Intracorp is not required to respond to these two requests.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the Motion for Extension of Time [DE 35]; **GRANTS in part** and **DENIES in part** the Plaintiff's Motion to Compel [DE 24]; and **GRANTS in part** and **DENIES in part** Defendants' Motion to Quash Subpoena Directed to Intracorp or, Alternatively, for a Protective Order [DE 22], denying the Motion to Quash and granting the alternative Motion for Protective Order consistent with this Order.

The Court advises the parties of its willingness to consider either an agreed motion for protective order or, if the parties cannot agree on the terms, a motion for protective order by LINA, addressing the privacy issues that may arise as a result of discovery permitted by this Order.

SO ORDERED this 25th day of February, 2010.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record